IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Matt Mason, | Case No. 3:12 CV 1881 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Virginia LaPointe, et al., | |
| Defendants. | |

### INTRODUCTION

*Pro se* Plaintiff Matt Mason filed this action under 42 U.S.C. §§ 1981 and 1985 against Allen Correctional Institution ("ACI") Head Librarian Virginia LaPointe, ACI Corrections Officer David Dunifon, ACI Unit Manager Cynthia Zwiebel, ACI Unit Manager Administrator Brooke Featheringham, ACI Conduct Report Hearing Officer Sergeant Rohdes, ACI Conduct Hearing Officer Sergeant Pugsley, ACI Rules Infraction Board Lieutenant Greta Callahan, and ACI Warden John Coleman. Plaintiff alleges he was disciplined for rightfully possessing legal material belonging to another inmate. He seeks monetary damages and expungement of his conduct record.

### BACKGROUND

According to a prison conduct report filed in connection with the incident at the center of Plaintiff's Complaint, on May 11, 2011, Officer David Dunifon noticed Plaintiff in the front of the ACI H-4 housing unit and stopped to question him (Doc. 1-2 at 1). Plaintiff was carrying legal paperwork he prepared for Inmate Frankie Graewe. Plaintiff told Officer Dunifon he was waiting

for Graewe to give him a motion prepared by Plaintiff. Officer Dunifon believed Plaintiff was not a law library clerk, and thus was not authorized to prepare legal materials or provide legal assistance to other inmates. According to Officer Dunifon's statement in the conduct report, legal work belonging to other inmates is considered to be contraband. According to Plaintiff, Officer Dunifon confiscated the motion and left the area to confer with Unit Managers Cynthia Zwiebel and Brooke Featheringham (Doc. 1 at 6). Upon his return, Officer Dunifon charged Plaintiff with a conduct violation for possession of contraband (Doc. 1-2). Hearing Officer Sergeant Rohdes reviewed the conduct report submitted by Officer Dunifon and found Plaintiff guilty of a conduct violation. Sergeant Rohdes issued a verbal reprimand to Plaintiff as a sanction for the offense. No other sanctions were imposed; however, the motion was not returned to Plaintiff (Doc. 1 at 7).

Two weeks later, Virginia LaPointe, the head librarian at ACI, summoned Plaintiff to ask him about a document typed on a library Westlaw computer which suggested Plaintiff was continuing to provide unauthorized legal services to Graewe (Doc. 1-2 at 6). The document appeared to be Graewe's affidavit, which stated Graewe was unfamiliar with the law and unable to successfully prosecute his habeas corpus petition without Plaintiff's assistance. The affidavit indicated Plaintiff drafted and typed every filing submitted in Graewe's habeas case.

As a result of his affidavit, Plaintiff was issued a second conduct report on May 26, 2011 for violation of institutional rules (Doc. 1-2 at 5). LaPointe noted that inmates were required by Ohio Department of Rehabilitation and Corrections ("ODRC") Policy 59-LEG-01 to seek assistance for legal work from a library staff member who would assign the specific task to one of the inmate clerks (Doc. 1-2 at 6). Lapointe stated that Graewe had not made such a request to library staff, and Plaintiff was not a law library clerk. The ODRC Policy also indicates that managing officers may approve individual arrangements for inmates to assist other inmates, but those arrangements are

2

made and monitored by the officers to ensure the assistance is proper and without abuse of rules regarding remuneration (Doc. 1-3 at 5). Nothing in Plaintiff's pleading suggests that Graewe requested the required special arrangement from a managing officer.

The Rules Infraction Board conducted a hearing on the second conduct report (Doc. 1-2 at 7). The Board, chaired by Lieutenant Greta Callahan, found Plaintiff guilty of the charge, and recommended the Warden impose a ten-day sentence in disciplinary control. Plaintiff attempted to file grievances to contest the decision of the Rules Infraction Board but was told to follow the appeals process for conduct violations (Doc. 1-2 at 4). Plaintiff then appealed the grievance to Warden John Coleman, who ultimately upheld the decision of the Rules Infraction Board (Doc. 1-2 at 13).

In his Complaint, Plaintiff states he is serving a sentence of twenty years to life for aggravated murder and has been incarcerated since 1991 (Doc. 1 at 2). He contends he worked in the law library at other institutions and considers himself to be a certified legal clerk. He successfully assisted other prisoners with litigation in Ohio courts and with federal habeas corpus proceedings in the federal courts in Ohio as well as the United States Court of Appeals for the Sixth Circuit, and the United States Supreme Court (Doc. 1 at 3). Plaintiff admits assisting Graewe with his habeas corpus petition in federal court, alleging Graewe could not find competent legal assistance at ACI (Doc. 1 at 8). Plaintiff disputes he was in possession of another inmate's legal materials, arguing the motion he had prepared did not become Graewe's property until Plaintiff successfully delivered it to Graewe and Graewe signed it (Doc. 1 at 6).

Plaintiff contends Defendants made clear their intent to prevent him from representing inmate clients. He alleges his only viable option to continue assisting inmates with legal filings was to seek a transfer to another institution (Doc. 1 at 10). Because he believed his request for a transfer

3

would be denied, he "refused to lock," knowing such a serious offense would likely result in time in segregation and a transfer. His calculation proved to be correct. He was placed in segregation for 310 days and then transferred to the London Correctional Institution. He contends local control placement was necessary to transfer out of ACI; however, he alleges it will likely be considered adversely by the parole board. He also experienced physical and psychological discomforts associated with his extended stays in segregation.

Plaintiff asserts eight claims for relief. Claims one through four pertain to the incident on May 11, 2011, and claims five through eight pertain to the May 26, 2011 incident. Plaintiff's first and fifth causes of action allege Defendants conspired to deprive Plaintiff of his civil rights in violation of 42 U.S.C. § 1985. The fifth cause of action also asserts LaPointe, Pugsley, Callahan, Coleman, and Zwiebel retaliated against him for filing a large number of grievances. Plaintiff's second and sixth causes of action claim Defendants violated his right to freedom of speech under the First Amendment. His third and seventh causes of action assert Defendants denied him due process under the Fourteenth Amendment. Plaintiff's fourth and eighth causes of action contend Defendants deprived him of his derivative right of access to the courts under the First Amendment.

## ANALYSIS

*Pro se* pleadings are to be liberally construed. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, a district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e)(2) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Brown v. Bargery*, 207 F.3d 863, 865–66 (6th Cir. 2000). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990).

4

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A cause of action fails to state a claim upon which relief may be granted when it lacks plausibility in the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Id.* (internal citation omitted). A plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a complaint, courts must construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

**Conspiracy Claims under 42 U.S.C. § 1985**

A conspiracy claim pursuant to 42 U.S.C. § 1985 must be one which deprives an individual of equal protection under the law. To state a claim for relief under Section 1985, a plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving a person or a class of persons, directly or indirectly, of equal protection of the laws; (3) through an act in furtherance of the conspiracy; (4) which causes injury to plaintiff or plaintiff's property or deprives him of any right or privilege of a citizen of the United States. *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003). The acts that allegedly deprived a plaintiff of equal protection of the law "must be the result of class-based discrimination." *Id.* (citing *Newell v. Brown,* 981 F.2d 880, 886 (6th Cir. 1992)). A plaintiff must allege sufficient facts to link two or more defendants in the conspiracy and to establish the requisite "meeting of the minds" essential to the existence of the conspiracy. *Coker v. Summit County*

5

*Sheriff's Dep't*, 90 F. App'x 782, 789 (6th Cir. 2003) (quoting *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993)).

Here, Plaintiff fails to allege facts suggesting an agreement to engage in class-based discrimination. First, he does not allege any facts suggesting which protected class of individuals he believes was the target for discrimination, nor does he allege his membership in this protected class. Prisoners are not a suspect class for purposes of an equal protections analysis. *Wilson v. Yaklick*, 148 F.3d 596, 604 (6th Cir. 1998). In addition, Plaintiff does not allege discrimination. The ODRC regulations prohibit all inmates from engaging in the practice of law in prison. Plaintiff does not allege he was treated differently than other inmates in this respect.

Moreover, even if Plaintiff had alleged class-based discrimination, he provided only conclusory allegations suggesting Defendants acted in concert. His entire conspiracy claim is based on allegations that he was issued a conduct report by LaPointe and found guilty of the conduct charge at a subsequent hearing by other Defendants (Doc. 1 at 8–9). This describes the procedure by which all conduct reports are heard. Plaintiff does not allege facts to suggest there was a meeting of the minds for a common purpose other than the one for which it was intended -- *i.e.*, to address inmate conduct violations. Conspiracy claims must be pled with a degree of specificity. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987) ("[V]ague and conclusory allegations unsupported by material facts will not be sufficient to state [a conspiracy] claim under § 1983."). Plaintiff's vague and conclusory allegations are not sufficient to state a Section 1985 claim for conspiracy.

**Retaliation**

Plaintiff also alleges Defendants LaPointe, Pugsley, Callahan, and Coleman charged him with a conduct violation and proceeded with a Rules Infraction Board hearing to retaliate against

6

him for filing grievances against prison personnel and medical department staff. To state a prima facie case for retaliation prohibited by the First Amendment, Plaintiff must establish: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in the protected conduct; and (3) a causal connection exists between the first two elements. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

### *Protected Conduct*

Plaintiff first must establish he engaged in conduct protected by the First Amendment. *Id*. at 394–95. Plaintiff claims Defendants retaliated against him for filing numerous grievances against various prison personnel (Doc. 1 at 9). Filing a grievance against prison officials is conduct protected by the First Amendment. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Filing frivolous grievances, however, is not protected conduct. *Hill*, 630 F.3d at 472. Plaintiff asserts he filed a number of grievances against various personnel, including Zweibel, medical staff, and other criminal complaints with outside prosecuting authorities. Plaintiff fails to provide copies of the alleged grievances sent to outside prosecuting authorities, but has attached at least one grievance directed towards ACI and two informal complaints (Doc. 1-2 at 2-3, 8). Although Plaintiff is unclear on this point, he has sufficiently alleged protected conduct through filing a grievance and informal complaints.

### *Adverse Action*

Plaintiff next must establish that Defendants took an adverse action against him. *Thaddeus–X*, 175 F.3d at 396. An adverse action is one that is "capable of deterring a person of ordinary firmness" from exercising the constitutional right in question. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Plaintiff does not have to show actual deterrence. *Harbin-Bey v. Rutter*,

7

420 F.3d 571, 579 (6th Cir. 2005). Even the threat of an adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct. *Hill*, 630 F.3d at 472; *Thaddeus-X*, 175 F.3d at 398. While this element is not an overly difficult one to meet, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Id.*

Plaintiff alleges four adverse actions: (1) LaPointe filed a conduct report against him for providing unauthorized legal assistance to another inmate; (2) Pugsley made the incorrect decision as a hearing officer to refer the conduct report to the Rules Infraction Board; (3) Rules Infraction Board Chairman Callahan found him guilty of the conduct charge; and (4) Warden Coleman refused to overturn the conduct report. Receiving a conduct report which could affect parole or result in placement in segregation potentially would deter a person of ordinary firmness from exercising the constitutional right to file grievances. *See Thaddeus-X*, 175 F.3d at 396. Thus, Plaintiff has alleged an adverse action.

### *Motivation for Adverse Action*

It must next be determined whether Defendants' subjective motivation for taking the adverse action was at least in part to retaliate against Plaintiff for engaging in protected conduct. *Thaddeus–X*, 175 F.3d at 399. If Plaintiff can show Defendants' adverse actions were at least partially motivated by his protected conduct, the burden then shifts to Defendants to show they would have taken the same action even absent such protected conduct. *Id*.

Plaintiff does not allege sufficient facts to reasonably suggest the conduct violation and disciplinary hearings were motivated by previously filed grievances. Plaintiff admits that he was assisting Graewe without authorization or staff approval in violation of ODRC regulations. He

8

acknowledges that ACI personnel told him that he was not authorized to provide legal services without approval, and should have either referred Graewe to the law librarian for assignment to a law clerk or referred him to his managing officer for permission to seek assistance from another inmate. Plaintiff disagreed with this policy and protested its applicability to his situation. His conduct report was for violation of this ODRC regulation. There are no allegations in the Complaint suggesting Defendants' actions were motivated by grievances Plaintiff wrote against other prison personnel in the past, as opposed to being based on the conduct for which he was found guilty and sanctioned. Thus, Plaintiff's retaliation claim fails because he has not sufficiently pled that Defendants' adverse action was motivated, at least in part, by his participation in protected conduct. *Siggers-El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005).

**Freedom of Speech**

In his second and sixth causes of action, Plaintiff asserts he was disciplined for drafting legal documents for another inmate, a violation of his First Amendment guarantee of freedom of speech. Although incarceration does not completely deprive prisoners of constitutional protections, prisoners have more limited rights than individuals in society at large. *Shaw v. Murphy*, 532 U.S. 223, 229 (2001). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a refraction justified by the considerations underlying our penal system." *In re Wilkinson*, 137 F.3d 911, 914 (6th Cir. 1998) (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)). In reviewing prisoner First Amendment claims, courts will uphold a prison regulation if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987).

Plaintiff was disciplined for engaging in the unauthorized practice of law by drafting legal documents for another inmate to file in court. The prison provides legal assistance to inmates

9

through inmate law clerks assigned and monitored by the law librarian. Plaintiff was not an ACI law clerk and did not work in the prison's law library. Prisoners can also approach their Unit Managers for approval to obtain the assistance of an inmate who is not a law clerk. Plaintiff was not acting with a Unit Manager's approval. The regulations prohibiting inmates from engaging in unauthorized practice of law are in place for security purposes to ensure one inmate is not indebted to another inmate for any form of remuneration (Doc. 1-3 at 4). Disciplining Plaintiff for preparing legal documents for other inmates without authorization was reasonably related to legitimate penological interests in maintaining order and ensuring stability in the prison. Thus, Defendants did not deny Plaintiff freedom of speech.

**Access to the Courts**

In his fourth and eighth causes of action, Plaintiff asserts violations of his First Amendment right of access to the courts. Specifically, Plaintiff claims he has a constitutional right under the First Amendment to assist Graewe with his legal actions. There is no corresponding right for an inmate to be a jailhouse lawyer or to act in a representative capacity; however, prisoners are entitled to receive assistance from jailhouse lawyers where no reasonable alternatives are present to provide them with access to the courts. *Johnson v. Avery*, 393 U.S. 483, 490 (1969); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). In short, Plaintiff has no independent right to act like a lawyer, or to assume the role of advocate. *Gibbs*, 10 F.3d at 378. Plaintiff can only succeed on this claim if Graewe had no other reasonable alternatives to provide him with access to the courts.

Furthermore, in this Circuit, an inmate's right to assist another prisoner "is wholly derivative of that prisoner's right of access to the courts." *Thaddeus-X*, 175 F.3d at 395. To state a claim for relief, Defendants' particular actions must have prevented Graewe from pursuing, or caused the

10

rejection of, a specific non-frivolous direct appeal, habeas corpus petition, or civil rights action. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). The right of access to the courts is directly related to an underlying claim, "without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). A plaintiff must "plead and prove prejudice stemming from the asserted violation." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

Plaintiff fails to show that inmate Graewe did not have reasonable alternatives. Plaintiff simply alleges that Graewe wished to have Plaintiff's assistance because he was "unable to present his claims himself and was unable to find competent assistance anywhere else within ACI" (Doc. 1 at 7). Plaintiff "does not allege that [Graewe] was denied access to the legal materials" in the prison's law library, or that Graewe was denied access to any other resources available at ACI. *See Roberts v. Croft*, 2012 WL 3061384, at *9 (N.D. Ohio 2012). The prison law library had inmate law clerks available to assist Graewe and a law librarian to supervise that program. If Graewe was unhappy with the assistance he received from the prison's law clerks, he could request his unit manager select an inmate to provide assistance. He does not have the right to request a specific inmate, nor does a specific inmate have the right to be appointed. While Plaintiff clearly believes the services he provided to Graewe were superior to those Graewe could have received from the inmate law clerks hired by ACI, the prison's decision to deny Plaintiff's assistance did not deprive Graewe access to the courts.

Furthermore, there is no indication in the pleading Graewe was actually denied access to the courts. Graewe's habeas corpus petition was not dismissed due to the actions of Defendants in prohibiting Plaintiff from representing him. Graewe's habeas petition was denied on the merits of the claims he asserted. *See Graewe v. Williams*, 2011 WL 3652400, at *1 (N.D. Ohio 2011). It was

11

not denied because Defendants confiscated the papers Plaintiff prepared for Graewe. In fact, Graewe filed a motion for extension of time on May 17, 2011, which was granted on May 19, 2011. *Id*. The magistrate carefully examined the grounds for relief asserted in Graewe's petition, which Plaintiff contends he prepared for Graewe, and found them to be without merit. *Id*. Defendants' actions did not cause Graewe's petition to be dismissed and therefore did not deny him access to the courts. Because Plaintiff's claims are derivative of Graewe's right, and because Plaintiff failed to allege Graewe lacked reasonable alternatives, Plaintiff's fourth and eighth claims fail.

**Due Process**

In his third and seventh causes of action, Plaintiff asserts that Defendants denied him due process by subjecting him to institutional discipline. The Fourteenth Amendment provides that a state may not "deprive any person of life, liberty, or property, without due process of law." The Due Process Clause has a procedural component and a substantive component, each imposing different constitutional limitations on government power. Once a plaintiff establishes the existence of a protected liberty or property interest, the procedural due process limitation requires a plaintiff be given the opportunity to be heard "in a meaningful manner." *See Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 563 (6th Cir. 1983). It does not require that the government refrain from making a choice to infringe upon a person's life, liberty, or property interest. It simply requires that the government provide "due process" before making such a decision. *Howard v. Grinage*, 82 F.3d 1343, 1349–53 (6th Cir. 1996). Procedural due process focuses on the process provided rather than the nature of the right at stake.

Substantive due process, on the other hand, serves the goal of preventing "governmental power from being used for purposes of oppression," regardless of the fairness of the procedures

used. *Daniels v. Williams*, 474 U.S. 327, 331 (1986). Substantive due process serves as a check on official misconduct which infringes on a fundamental right not otherwise specified in the Bill of Rights, or as a limitation on official misconduct, which although not infringing on a fundamental right, is so literally "conscience shocking" as to rise to the level of a constitutional violation. *Howard*, 82 F.3d at 1349.

The first step in both due process inquiries is to determine whether a protected liberty or property interest has been infringed by Defendants. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Prisoners have narrower liberty and property interests than other citizens, as "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995). The Due Process Clause, standing alone, does not provide a liberty or property interest in freedom from government action taken within the sentence imposed. *Id*. at 480. Furthermore, the Constitution itself does not guarantee a liberty interest in avoiding transfer to more adverse conditions of confinement. *Wilkinson*, 545 U.S. at 221. Therefore, prison discipline will not give rise to a protected liberty interest unless the sanction imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Generally, unless placement in segregation is accompanied by a withdrawal of good time credits or is for a significant period of time that presents an unusual hardship on the inmate, no liberty or property interest will be found. *Id*. Plaintiff was sentenced to ten days in disciplinary segregation as a result of his continued efforts to provide unauthorized legal services to Graewe. The decision of the Rules Infraction Board does not state it imposed a revocation of good time credits along with the term of segregation. Temporary placement in disciplinary confinement as a

13

result of Plaintiff's misconduct is within the range of confinement normally expected for one serving an indeterminate term of twenty years to life. *Sandin*, 515 U.S. at 487. This consequence does not impose an atypical or significant hardship in relation to ordinary incidents of prison life. Plaintiff therefore had no liberty interest in avoiding placement in segregation and the due process clause was not triggered by this action.

Plaintiff contends he was later placed in administrative segregation for 310 days for "refusing to lock" (Doc. 1 at 10). This claim is unrelated to the sanction imposed for assisting Graewe. Moreover, Plaintiff intentionally engaged in conduct which he knew would result in this sanction with the hope the sanction would also include an institutional transfer. He does not allege facts to suggest he was denied a hearing with notice and an opportunity to be heard prior to the imposition of this sanction. Plaintiff's substantive due process claim is also without merit.

Plaintiff does not allege facts to suggest a substantive right not otherwise specified in the Constitution was implicated, and his claim would therefore have to be premised on conduct alleged to be so severe it shocks the conscience. Plaintiff seems to argue that because of certain conditions within ACI and Defendants' actions towards him, he was left with no choice but to intentionally engage in wrongful conduct to seek a transfer. However, Plaintiff does not specify what conditions violated his right to due process, or that there were any conditions that "shocked the conscience." Plaintiff's segregation was the result of intentional conduct, as discussed above, and his allegations of the segregation conditions are insufficient to show a violation. Plaintiff also does not allege he pursued any other avenues to seek such a transfer from ACI, other than the wrongful behavior discussed. It is well understood that a citizen does not suffer constitutional deprivation with every form of harassment by a government agent. *Parate v. Isibar*, 868 F.2d 821, 832 (6th Cir. 1989).

14

These reasons, combined with Plaintiff's misconduct in assisting Graewe, show that Plaintiff's situation was not so "conscience shocking" as to warrant relief.

Furthermore, where a specific Amendment provides an explicit source of constitutional protection against a particular sort of governmental conduct, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *See Graham v. Connor*, 490 U.S. 386, 395 (1989). Plaintiff asserts a substantially similar claim under the First Amendment, which was already considered by this Court. If he had a viable cause of action which resulted from Defendants' refusal to allow him to represent Graewe, it would arise under the First Amendment. To the extent Plaintiff intended to assert a claim for denial of substantive due process, it is dismissed as duplicative of his First Amendment claims.

## CONCLUSION

Accordingly, this action is dismissed under 28 U.S.C. § 1915(e). This Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

November 26, 2012